**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

———————————

No. 97-20591

———————————


UNITED STATES OF AMERICA,

                                 Plaintiff-Appellee,

VERSUS

CHRIS BROWN, JERMAINE WELLS,
and
DERRICK CHISM,

                                 Defendants-Appellants.


———————————————————

Appeals from the United States District Court
for the Southern District of Texas
(H-97-CR-3-1)

———————————————————

December 28, 1998

Before KING, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


    Chris Brown, Derrick Chism, and Jermaine Wells appeal their convictions stemming from a bank robbery. Brown and Chism challenge their convictions of (1) conspiracy to commit armed bank robbery; (2) armed bank robbery; and (3) using a firearm during and in relation to a federal crime of violence. Wells challenges his conviction of conspiracy to commit armed bank robbery. Finding no

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

error, we affirm.

                              I.

                              A.

In the presence of three employees and a customer, a bank was robbed at gunpoint by three masked persons.  One of the robbers carried a pistol-grip shotgun, another a pistol, and the third a garbage bag.  On the basis of testimony from a number of witnesses, the government arrested and charged Brown, Chism, Wells, and Bylan Phoenix.

First, the manager of a drug store located across the street from the bank testified that he observed four black males sitting in a car in the drug store parking lot observing the bank in a suspicious manner.  He telephoned the manager of the bank and warned him about his suspicions.  Later, the drug store manager viewed a lineup and identified Wells and Phoenix as two of the occupants of the vehicle.

Second, the bank manager testified that on the morning of the robbery, a young black male had walked into the bank, obtained account information and a brochure, and left.  In a police lineup, the bank manager tentatively identified Wells.

Third, and most importantly, Phoenix testified, on behalf of the government, that he had been friends with Brown, Chism, and Wells and that they had planned and executed the robbery.  Phoenix testified that Wells's job was to go into the bank and feign interest in getting a loan while checking out the security system.  Originally, Wells was to sit in the car while the others went

                              2

inside, and sound the horn if anyone showed up.

On the day of the robbery, they went to the bank and made the final check but, because of the heavy flow of customers, decided not to commit the robbery. They left the bank area and dropped Wells off because he had a job interview. Approximately five hours later, Brown, Chism, and Phoenix decided to rob the bank. Neither Brown, Chism, nor Phoenix had any contact with Wells during this five-hour period, and Wells was not with them when they committed the robbery. The robbery proceeds were split equally among Brown, Chism, and Phoenix. Wells received $100. Wells admitted to police that he was in the bank on the day of the robbery and told the others about the security in the bank.

Other witnesses corroborated aspects of the government's case. Records from a local gun store showed that Brown had purchased a pistol-grip shotgun, and a bank teller testified that the robbers had carried a similar weapon. A flea market merchant testified that near the day of the robbery, he had sold some jewelry to Brown.

B.

Brown, Chism, and Phoenix were charged with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371 (count 1S); armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) (count 2S); and using a firearm during and in relation to a federal crime of violence in violation of 18 U.S.C. 924(c)(1) (count 3S). Wells was indicted only on the conspiracy count. Brown, Chism, and

3

Wells pleaded not guilty and were jointly tried. Phoenix pleaded guilty and testified for the government. The jury found the defendants guilty on all counts.

## II.

### A.

Brown argues that he was denied effective assistance of counsel. This is a mixed question of law and fact, subject to *de novo* review. *See Jones v. Jones*, 1998 U.S. App. LEXIS 31379, at *40 (5th Cir. Dec. 16, 1998); *Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996). Brown alleges that his trial counsel failed to (1) file a motion for discovery; (2) file a motion to suppress; (3) join in co-counsel's challenge for cause of an arguably biased and equivocating juror; (4) discredit Phoenix during cross-examination by demonstrating clear inducement to lie under the terms of his plea agreement; (5) move for acquittal after the close of the government's case; (6) object to the jury instructions; and (7) file a motion for new trial and a notice of appeal.

Generally, there are two components to an ineffective assistance of counsel claim. The defendant must show that his counsel's performance was deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In some instances, however, prejudice is presumed. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Id.* at 692.

4

1.

Brown relies on *United States v. Cronic*, 466 U.S. 648, 654 n.11 (1984), in which the Court stated, "In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided."  "If no actual 'Assistance' 'for' the accused's 'defense' is provided, then the constitutional guarantee has been violated."  *Id.* at 654.  Brown also relies on *Tucker v. Day*, 969 F.2d 155 (5th Cir. 1992), in which defendant's counsel remained silent throughout the re-sentencing hearing.  The court found a constructive denial of counsel and presumed prejudice because "Tucker was unaware of the presence of counsel, counsel did not confer with Tucker whatsoever, and as far as the transcript is concerned, counsel made no attempt to represent his client's interests." *Id.* at 159.  Finally, Brown points to *United States v. Taylor*, 933 F.2d 307 (5th Cir. 1991), in which the court presumed prejudice because the defendant had requested counsel at his sentencing hearing and was granted only standby counsel.

Unless a defendant can show that his case is squarely governed by *Cronic*, he must rebut a presumption that the analysis for determining a Sixth Amendment violation is governed by *Washington*. *See Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990).  In *Martin v. McCotter*, 796 F.2d 813, 820 (5th Cir. 1986), we explained that a constructive denial of counsel under *Cronic* occurs in "'only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.'"  (quoting

5

*Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984)). The court explained that where an attorney's efforts provided the defendant with "some meaningful assistance," the defendant must allege and prove prejudice. *Craker v. McCotter,* 805 F.2d 538, 543 (5th Cir. 1986). In this circuit, "bad lawyering, regardless of *how* bad, does not support the [*Cronic*] presumption; more is required." *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990) (emphasis in original).

Brown cannot demonstrate that he was not provided with meaningful assistance at trial. His counsel actively participated in the jury selection process by questioning some of the jurors in response to the court's general questioning. Counsel questioned the credibility, on cross-examination, of all the government's witnesses who implicated Brown, including the officers who took his statements and prepared the lineup, and joined in the objections made by co-counsel to the jury instructions. Trial counsel presented closing argument on Brown's behalf, pointing to evidence of other suspects who were not placed in the lineup, to the denial of the crime by everyone arrested except Phoenix, to the weaknesses in Phoenix's testimony and his motive to fabricate, and to the allegedly suggestive nature of the lineup.

This is unlike the circumstance in *Tucker*, in which counsel failed to provide any assistance, or in *Taylor*, in which the defendant was provided only with stand-by counsel. Brown was not constructively denied counsel. Therefore, his ineffective assistance claim does not qualify under *Cronic*, and there is no

presumption of prejudice.

2.

Absent a presumption of prejudice, a defendant "is required to establish both (1) constitutionally deficient performance by counsel and (2) actual prejudice as a result of counsel's ineffectiveness." *Moody v. Johnson*, 139 F.3d 477, 482 (5th Cir.), *cert. denied*, 119 S. Ct. 359 (1998). "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) (citing *Washington*, 466 U.S. at 687), *cert. denied*, 118 S. Ct. 1567 (1998).

Brown concedes that, given the state of the record, he cannot conclusively prove prejudice. He argues, however, that because he is not entitled to counsel in a proceeding under § 2255, he was prejudiced by counsel's failure to develop a record showing counsel's own ineffectiveness so that the claim could be reviewed on direct appeal.

Brown argues that such a record should have been made in a motion for new trial. Trial counsel would have been limited to making such a motion within seven days after the verdict, because evidence of ineffective assistance of counsel does not constitute newly discovered evidence under FED. R. CRIM. P. 33. *See United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997). Therefore, Brown alleges that his attorney's failure to challenge his own performance in a motion for a new trial is "constitutionally

7

deficient" under *Washington.*

To prove deficient performance, the defendant must show that "his counsel's actions 'fell below an objective standard of reasonableness.'" *Pratt v. Cain*, 142 F.3d 226, 231 (5th Cir. 1998) (quoting *Washington*, 466 U.S. at 688). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance, and "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pratt*, 142 F.3d at 231 (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir.), *writ of habeas corpus denied*, 118 S. Ct. 274 (1997)).

Because Brown's attorney participated actively in the trial in selecting jurors and cross-examining witnesses, the attorney acted reasonably in deciding not to file a motion for a new trial based on his own ineffectiveness. Moreover, an attorney's decision not to challenge his own performance at trial, especially within seven days of the verdict, falls within the realm of reasonable professional judgment. We cannot say that, in this case, trial counsel's failure to challenge his own performance falls "below an objective standard of reasonableness." *Pratt,* 142 F.3d at 231. Therefore, Brown has failed to show the deficient performance on the part of his trial counsel under the first prong of the *Washington* test.

Brown concedes that he cannot meet the *Washington* test for his

8

other alleged errors, because the record has not been sufficiently developed.  Therefore, the only prejudice he alleges requires us to find that the attorney's failure to challenge his own performance constitutes deficient performance.  Because Brown cannot meet the "deficient performance" prong of the *Washington* test, we need not reach Brown's argument that he is prejudiced by being limited to pursuing his claim in a proceeding during which he is not guaranteed the right to counsel.  Because the record is not sufficiently developed to allow this court fairly to evaluate the merits of an ineffective assistance claim, we dismiss the claim without prejudice to his right to raise it in a 28 U.S.C. § 2255 motion.  *See United States v. Gaytan*, 74 F.3d 545, 557 (5th Cir.), *cert. denied*, 117 S. Ct. 506 (1996).

B.

Chism contends that the evidence is insufficient.  Proof of a conspiracy does not require direct evidence; an agreement may be inferred from circumstantial evidence, such as concert of action. *United States v. Schmick*, 904 F.2d 936, 941 (5th Cir. 1990).  If a conspiracy is to be proved by circumstantial evidence, each link in the inferential chain must be plainly shown.  *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir. 1982).  To establish the offense of bank robbery, the government must prove that (1) an individual or individuals (2) used force and violence or intimidation (3) to take or attempt to take, (4) from the person or presence of another, (5) money, property, or anything of value

9

(6) belonging to or in the care, custody, control, management, or possession of (7) a bank. *United States v. McCarty*, 36 F.3d 1349, 1357 (5th Cir. 1994).

A person who aids or abets the commission of a crime is punishable as a principal. *See* 18 U.S.C. § 2. To prove aiding and abetting, the government must show that the defendant (1) associated with the criminal venture; (2) participated in it; and (3) sought by action to make it succeed. *United States v. Salazar*, 66 F.3d 723, 729 (5th Cir. 1995).

The evidence of Chism's guilt consisted of the following: (1) co-conspirator Bylan Phoenix identified Chism as the man who brought the garbage bag; (2) Chism was arrested with Wells and Brown, two people identified as being involved in the robbery; and (3) when arrested, Chism was wearing gold jewelry, and the identified members of the bank robbery had purchased gold jewelry shortly after the bank robbery. Chism contends that each of these facts can be explained.

First, Chism attempts to discredit Phoenix's testimony on the ground that Phoenix was a convicted felon who had a motive to lie to reduce his sentence. Chism contends that Phoenix's testimony was not corroborated by any other evidence. No witness before, during, or immediately after the robbery identified Chism as one of the robbers. Neither McCampbell nor Olquin identified Chism as one of the robbers. Chism contends that Phoenix, in an attempt to protect a friend, could have substituted Chism's name for that of the real bag man.

Second, Chism contends that the fact that he was arrested with members of the conspiracy some days later shows nothing more than an association with members of the conspiracy, not participation in the robbery. Proof of "mere association" with persons involved in criminal activity is insufficient, by itself, to establish participation in a conspiracy. *Galvan*, 693 F.2d at 420.

Third, Chism contends that the fact that he was wearing gold jewelry shows his vanity and not criminal behavior. The jewelry salesman recognized Chism as someone who had been to his flea market but did not say when he had seen him. The salesman produced no receipts showing that Chism had purchased jewelry from him. Chism contends that this evidence proves, at best, that Chism and one of the bank robbers shopped at the same flea market.

Although there could be alternative explanations for the evidence implicating Chism, a rational jury easily could have found Chism guilty beyond a reasonable doubt, considering the evidence and the inferences to be drawn therefrom in the light most favorable to the government. Testimony by a co-conspirator fulfilling a plea bargain need not be corroborated by independent evidence. *United States v. Hernandez*, 962 F.2d 1152, 1157 (5th Cir. 1992). Uncorroborated testimony of a co-conspirator, however, that is incredible or otherwise insubstantial on its face will not support a verdict. *Id.* This court has further defined "incredible" and "insubstantial" as meaning "so unbelievable on its face that it defies physical laws." *United States v. Gardea Carrasco*, 830 F.2d 41 (5th Cir. 1987).

11

Chism has not shown that Phoenix's testimony is incredible or otherwise insubstantial on its face. Accordingly, the jury was entitled to believe Phoenix and to convict Chism without any corroborating evidence of guilt.

C.

Wells also questions the sufficiency of the evidence. When considering a claim of insufficiency, we review the evidence to determine whether a rational trier of fact, after considering the evidence and reasonable inferences drawn therefrom in the light most favorable to the verdict, could have found the defendant guilty beyond a reasonable doubt. *United States v. Walker*, 148 F.3d 518, 523 (5th Cir. 1998).

To establish a conspiracy, the government must show (1) an agreement between two or more persons (2) to commit a crime and (3) an overt act committed by one of the conspirators in furtherance of the agreement. *See United States v. Gray*, 96 F.3d 769, 772-73 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 1275 (1997). "'To be convicted of conspiracy, defendants 'need not . . . have committed the crime that was its object.'" *United States v. Manges*, 110 F.3d 1162, 1177 (5th Cir. 1997) (quoting *United States v. Duvall*, 846 F.2d 966, 975 (5th Cir. 1988)) (ellipses in original), *cert. denied*, 118 S. Ct. 1675 (1998).

Wells does not contest the government's assertion that Brown, Chism, and Phoenix committed bank robbery or that he went into the bank on the day of the robbery to determine whether there was

12

security and reported to his co-conspirators that there was no security in the bank. Wells contends, however, that the conspiracy ended when he, Brown, Chism, and Phoenix left the bank after deciding not to rob it because of the heavy flow of customers. Wells contends that Brown, Chism, and Phoenix robbed the bank pursuant to a conspiracy to which he was not a party.

Wells contends that because the indictment alleged only one conspiracy, the evidence created a variance that prejudiced his rights. The primary considerations in determining whether the evidence supports a single conspiracy or multiple conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings. *United States v. Morris*, 46 F.3d 410, 415 (5th Cir. 1995). We will affirm the jury's finding that the government proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most favorable to the prosecution, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt. *Id.* (citing *United States v. DeVarona,* 872 F.2d 114, 118 (5th Cir. 1989)).

Under this test, reasonable jurors could find a single conspiracy beyond a reasonable doubt. There was a common goal to rob a bank. Wells played a role in this scheme. He went into the bank and reported to his co-conspirators that there was no security. Relying on that information, Wells's co-conspirators returned to the same bank that day and robbed it. All the participants in the "first" and "second" conspiracies were the

13

same, except that Wells was not present when his co-conspirators robbed the bank. "[T]here is no requirement that every member must participate in every transaction to find a single conspiracy."[2] Given these facts, reasonable jurors were not precluded from finding a single conspiracy beyond a reasonable doubt.

A conspirator is liable for the criminal acts of his co-conspirator if (1) the substantive offense was committed in furtherance of the conspiracy and (2) the offense could reasonably have been foreseen to be a natural consequence of the unlawful agreement. *United States v. Wilson*, 105 F.3d 219, 221 (5th Cir.) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)), *cert. denied*, 118 S. Ct. 133 (1997). Because Wells conspired to rob a bank, he is liable for the robbery committed by his co-conspirators even though he was not present when the robbery was committed.

Although a conspirator may withdraw from the conspiracy and avoid liability for acts subsequently committed by his co-conspirators, "[a] defendant is presumed to continue in a conspiracy unless he makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose." *United States v. Torres*, 114 F.3d 520, 525 (5th Cir.), *cert. denied*, 118 S. Ct. 316 (1997). To escape responsibility, Wells has

---

[2] *United States v. Wilson*, 116 F.3d 1066, 1076 (5th Cir.), *vacated for reh'g en banc on other grounds*, 123 F.3d 213 (5th Cir. 1997), *cert.* denied, 118 S. Ct. 704, *cert. denied*, 118 S. Ct. 857, *cert. denied*, 118 S. Ct. 1309 (1998), *opinion on rehearing en banc sub nom. United States v. Brown*, 1998 U.S. App. LEXIS 28613 (5th Cir. Nov. 16, 1998).

the burden of proving that he took affirmative acts inconsistent with the conspiracy and that these acts were communicated in a manner reasonably calculated to reach his co-conspirators. *See id.; see also United States v. Devine*, 934 F.2d 1325, 1335 (5th Cir. 1991) (noting that withdrawal is not accomplished when the defendant merely states, in a taped conversation, "I am not involved in that anymore, my partner has fled, he has left the state."). "[M]ere cessation of activity in furtherance of the conspiracy does not constitute withdrawal." *Torres*, 114 F.3d at 525.

Wells did not take any affirmative acts inconsistent with the conspiracy that would have put his co-conspirators on notice that he wished to withdraw from the conspiracy. The only reason he was not with his co-conspirators when they robbed the bank was because he was at a job interview. Even if Wells had wished to withdraw from the conspiracy, it was probably too late. "Withdrawal after entering into the agreement and the commission of one or more overt acts pursuant thereto does not prevent a conspiracy conviction of the withdrawing party." *United States v. Herron*, 825 F.2d 50, 59 (5th Cir. 1987) (citing *United States v. Jimenez*, 622 F.2d 753 (5th Cir. 1980), and 2 LaFave & Scott, Substantive Criminal Law § 6.5, at 110-11 (1986)). Moreover, Wells received $100 for his part in the scheme.

In *Herron*, the defendant was charged with a conspiracy involving failure to declare currency at the border. The defendant claimed that he was exonerated because, at the last minute, he

15

instructed his co-conspirator to file the customs report, an instruction the co-conspirator disregarded.  At this point, the conspiracy had been entered into, and virtually all the alleged overt acts had taken place.  This court held that the jury was entitled to find either that the instruction was feigned and not intended to be followed or that it represented, at most, a change of heart after the conspiracy offense had been committed. Likewise, the jury in this case was entitled to find that Wells's absence during the robbery, after he had already gone into the bank and reported the lack of security to his co-conspirators, did not allow him to escape conviction.

AFFIRMED.